Robert G. Day, Mayor and Liquor Commissioner for the City of Peoria, Illinois, Plaintiff-Appellee, v. Illinois Liquor Commission and Harold L. Parker, Defendants-Appellants.

Gen. No. 11,675.

Second District, Second Division.
January 24, 1963.
Rehearing denied April 2, 1963.

Irwin S. Rubelle, of Peoria, for Harold L. Parker, appellant.

Max J. Lipkin, of Peoria, for appellee.

WRIGHT, P. J.

The defendant-appellant, Harold L. Parker, d/b/a Harold's Club, holds a Class A Liquor License issued by the plaintiff-appellee, Robert G. Day, as Mayor and Liquor Commissioner of the City of Peoria, Illinois. Defendant-appellant has operated a dram shop in Peoria for about eight years last past at 103 North Washington Street. The license requires the operator to close at 4:00 o'clock a. m.

Pursuant to notice and after hearing held on July 14, 1961, plaintiff-appellee on July 18, 1961, rendered a decision finding that the defendant-appellant was guilty of operating his tavern after closing hours and the commission of the crime of bribing or attempting to bribe a police officer and entered an order revoking defendant-appellant's local liquor license.

Defendant-appellant appealed this decision to the Illinois Liquor Control Commission and the commission on November 8, 1961, reversed the decision of the plaintiff-appellee, and subsequently denied a Petition for Rehearing.

Plaintiff-appellee afterwards on December 6, 1961, filed in the Circuit Court of Peoria County a Complaint for Administrative Review of the decision of the Illinois Liquor Control Commission and that court on

282

May 17, 1962, entered its order finding that the decision of the Illinois Liquor Control Commission was contrary to the manifest weight of the evidence and reversed the decision and affirmed the order revoking the defendant-appellant's local liquor license entered on July 18, 1961, by the plaintiff-appellee, and further ordering that the liquor license issued by the Illinois Liquor Control Commission to the defendant-appellant be revoked. From this order, defendant-appellant appeals.

Defendant-appellant contends that the facts in the record sustains the finding of the Illinois Liquor Control Commission and that the Circuit Court erred in decreeing that the findings of the commission were contrary to the manifest weight of the evidence and in reversing its order.

Briefly the evidence adduced at the hearing before the Illinois Liquor Control Commission discloses that on the morning of June 25, 1961, police officers Boucher and Trefry arrived at Harold's Club between 4:20 and 4:30 o'clock a. m. to make a routine check as to whether the tavern was closed. They found the door locked and upon knocking at the door, they were admitted by Parker, defendant-appellant herein, and found eighteen persons in the tavern, seven of whom were employees, the other eleven being customers. There were glasses on the tables and the bar partially filled with various beverages. No drinks were served while the officers were in the club. Shortly afterwards, Sgt. Barber arrived at the club and the names and addresses of those present were taken but no arrests were made.

During the course of the investigation by police officers, a conversation was held by the defendant-appellant and Sgt. Barber. The testimony concerning this conversation is somewhat conflicting.

283

Sgt. Barber testified that the defendant-appellant wanted to talk to him and that a conversation did take place outside the building immediately after Barber arrived and that the defendant-appellant asked him "if there was any way to square this beef, he couldn't stand it," and I said, "I don't know how," and he said, "he could go to 35 or 40 bucks." Barber testified that he told defendant-appellant that he would have to see someone else besides him that he could not square it. Barber testified that he re-entered the building and called Lt. McMillan at Police Headquarters and advised him of defendant-appellant's conversation and offer of bribe. Barber further testified that Parker again called him to the front of the tavern and offered him an "Ace" $100 to squash the beef.

With reference to this conversation, defendant-appellant stated that he asked Barber to step outside and that he had said to Barber that we have been friends for years and that he asked Barber if all of these people are going to jail and Barber stated he did not know and then Parker said surely you can suggest something. I can't stand this beef. Every time I open my door, I am written up in the paper. He further stated that Barber then suggested that he take $100 down to the Lieutenant. Parker further testified that about twenty-five or thirty minutes later, he went to the police station where he entered the office of Lt. McMillan and that there was present in the office Lt. McMillan, officers Boucher, Trefry and Sgt. Barber, and that concealed in a closet in the office was Officer Helm, whose presence was unknown to the defendant-appellant, and that after some discussion about being open after closing hours he placed a roll of bills on McMillan's desk which he thought was a hundred dollars and McMillan said, "is that for bribery," and I said, "I wouldn't think of bribing you." McMillan then called for Helm to step out of the closet and ordered defendant-appellant placed under arrest.

Subsequently a city warrant was issued charging the defendant-appellant with a violation of the closing hour regulation of the City of Peoria. Later the defendant-appellant was found guilty of the violation in the Justice of the Peace Court and in the Circuit Court and a fine assessed in the amount of $100 plus costs.

Defendant-appellant was also indicted for bribing of a police officer but no action has been taken on this indictment.

The question before us on this appeal is whether or not the Illinois Liquor Control Commission was justified in reversing the order of the local commissioner of the City of Peoria on the basis of the evidence adduced at the hearing. The relevant statutory provision is found in Illinois Revised Statutes, Chapter 43, Section 153:

"Except as hereinafter provided, any order or action of a local liquor control commissioner granting or refusing to grant a license, revoking or suspending or refusing to revoke or suspend a license or refusing for more than 30 days to grant a hearing upon a complaint to revoke or suspend a license may within 20 days after notice of such order or action be appealed from by any resident of the political subdivision under the jurisdiction of said local liquor control commissioner or any person interested, to the State commission, in which event the matter of such order or action of such local liquor control commissioner shall be tried de novo by the State Commission as expeditiously as circumstances permit. . . .

"If after trial de novo hearing or review as provided herein, the State commission . . . shall decide that such license has been *improperly . . . revoked* . . . , it shall enter an order in conformity with such findings. . . ." (Emphasis added.)

285

In Daley v. License Appeal Commission, 11 Ill App 2d 421, 138 NE2d 73, the Mayor of Chicago in his capacity as local liquor control commissioner, rejected an application for renewal of a retail liquor license on the ground that the applicant had served liquor to minors in violation of the Ordinances of the City of Chicago and the Statutes of the State of Illinois. An appeal was taken to the License Appeal Commission and the commission reversed the order of the local commissioner. The trial court entered judgment affirming the order of the License Appeal Commission. The Appellate Court for the First District reversed the trial court and held that on appeal from a decision a local liquor control commissioner granting or denying an application for a liquor license the question before the License Appeal Commission is whether or not the local commissioner abused his discretionary power and whether he acted arbitrarily and without good cause. The court stated at Page 427 of 11 Ill App2d and at Page 76 of 138 NE2d:

"The record shows that the local commissioner acted upon information reported to him by police officers which he believed to be true. This was not an instance of arbitrary or capricious action. We conclude that the judgment of the trial court and the License Appeal Commission was erroneous and should be reversed."

Although the evidence in the record before us is conflicting concerning the bribing or attempting to bribe a police officer, the evidence is clear that the defendant-appellant violated the 4:00 o'clock a. m. closing hour ordinance of the City of Peoria and was fined $100 for such violation.

In addition, the evidence is to the effect that in September, 1959, the defendant was charged with selling liquor to minors and again in March, 1960, there was a similar charge against the defendant and on the

286

latter charge he received a suspension of some twenty days.

The Illinois Liquor Control Act (Ill Rev Stats, c 43, § 112) grants to each local liquor control commission certain powers, functions and duties with respect to local liquor licenses, among these being the power to grant or suspend for not more than 30 days or revoke for cause liquor licenses issued to persons for premises within his jurisdiction.

██ The business of keeping a dram shop is one which no citizen has a natural or inherent right to pursue, but such business is subject to legislative restrictions, regulations and control; and the liquor commissioner is vested with discretionary power which may be reasonably exercised in revoking a liquor license for cause. Harrison v. People, 222 Ill 150, 78 NE 52.

Aside from the language of the statute itself, there is a sound basis in public policy for vesting discretion in the mayor or local liquor control commissioner to revoke a liquor license. The business of selling alcoholic liquors at retail when not properly done is a business fraught with danger to the health, public safety and moral fiber of the community. The harsh provisions of the Dram Shop Act is evidence that the legislature had knowledge of this fact at the time the act was adopted.

█ The question of whether a liquor license should be granted or revoked presents a local problem bearing upon the public health, safety and morals of the community; and we believe that the local liquor control commissioner is better able to solve these problems than anyone else because there is available to him many sources of information from which he can intelligently determine whether or not a liquor license should be revoked, and his decision in this matter should not be disturbed unless there is a clear abuse

of discretion by him. Daley v. License Appeal Commission, supra.

█ Section 153 of the Dram Shop Act, which deals with appeals from the orders of local liquor control commissioners, provides that the matter of the propriety of such order or action should be tried de novo by the Illinois Liquor Control Commission. An inquiry into the propriety of the act of a local liquor control commissioner in revoking a liquor license involves only a determination of whether or not the local commissioner abused his discretionary power and whether he acted arbitrarily and without good cause in revoking the license.

█ We conclude that when all of the evidence in the record is considered, the plaintiff-appellee as Mayor and local Liquor Control Commissioner of the City of Peoria, did not abuse his discretionary power and act arbitrarily and without good cause in entering the order on July 18, 1961, revoking defendant-appellant's local liquor license, but on the contrary, the evidence in the record support his decision or revocation.

For the reasons herein stated, the order of the Circuit Court of Peoria County is affirmed.

Affirmed.

CROW and SPIVEY, JJ., concur.